**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WEISER LAW FIRM PC; ROBERT B. WEISER, | Nos. 23-55693<br>23-55729 |
| Plaintiffs-Appellants, | D.C. No. 8:23-cv-00171-CJC-JDE |
| v. | |
| MICHAEL HARTLEIB, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted June 5, 2024
Pasadena, California

Before: COLLINS and LEE, Circuit Judges, and RODRIGUEZ,[**] District Judge.

Plaintiffs Weiser Law Firm PC and Robert Weiser, its principal and founder,

(collectively, "Weiser") appeal the district court's order granting Defendant

Michael Hartleib's special motion to strike under California's anti-Strategic

Lawsuit Against Public Participation ("anti-SLAPP") statute, *see* CAL. CODE CIV.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Xavier Rodriguez, United States District Judge for the Western District of Texas, sitting by designation.

PROC. § 425.16, and dismissing this action with prejudice. Weiser also appeals the district court's subsequent award of attorney's fees. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I

A special motion to strike under California's anti-SLAPP statute involves a two-step inquiry. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). At the second step, the burden shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim." *Id*. We review a district court's ruling on a special motion to strike under California's anti-SLAPP statute de novo. *Id*. Because Hartleib's motion to strike involved a legal attack on the complaint and not a factual one, "we analyze the motion pursuant to Rules 8 and 12" of the Federal Rules of Civil Procedure. *Herring Networks*, 8 F.4th at 1155. Accordingly, we "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021) (citation omitted).

## A

At the first step, we address whether Weiser's claims arise from acts of

Hartleib "in furtherance of [Hartleib's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." CAL. CODE CIV. PROC. § 425.16(b)(1). The statute defines this phrase to include, *inter alia*, "any written or oral statement or writing" that either is "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," or is "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." *Id*. § 425.16(e)(1), (2).

In the operative complaint, Weiser asserted three causes of action: (1) a claim seeking entry of a vexatious litigant order against Hartleib; (2) a claim for abuse of process; and (3) a claim for malicious prosecution. In his opening brief, Weiser did not contest the granting of the motion to strike with respect to the first claim seeking entry of an order declaring Hartleib to be a vexatious litigant. Accordingly, we deem any issues concerning that claim to be forfeited, *see United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005), and we address only Weiser's claims for abuse of process and malicious prosecution.

Under well-settled California law, Weiser's claims for abuse of process and malicious prosecution fall within the anti-SLAPP statute's definition of protected activities. A "cause of action for abuse of process is . . . subject to the [anti-SLAPP] statute since it arises from the exercise of the right of petition." *Siam v.*

3

*Kizilbash*, 31 Cal. Rptr. 3d 368, 374 (Ct. App. 2005); *see also Booker v. Rountree*, 66 Cal. Rptr. 3d 733, 736 (Ct. App. 2007) ("Abuse of process claims are subject to a special motion to strike."). Similarly, under "[t]he plain language of the anti-SLAPP statute . . . every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding." *Daniels v. Robbins*, 105 Cal. Rptr. 3d 683, 691 (Ct. App. 2010); *see also Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 741 (Cal. 2003) ("[E]very [California] Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute."). Weiser asserts that Hartleib's actions involved defamatory speech that is categorically unprotected *by the First Amendment*, but such a claim does not suffice to remove those actions, at step one, from the broadly framed categories of activities covered *by the anti-SLAPP statute*. *See Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016) ("There is no serious dispute that the *libel* and false light suit targeted speech protected by the anti-SLAPP statute." (emphasis added)).

**B**

At the second step, the burden shifts to Weiser to show a reasonable probability of prevailing on his abuse of process and malicious prosecution claims. *See* CAL. CODE CIV. PROC. § 425.16(b)(1). In determining whether Weiser has

carried that burden, we address these claims separately.

## 1

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed." *Rusheen v. Cohen*, 128 P.3d 713, 718 (Cal. 2006). "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Id*. Weiser asserts that he has adequately stated the elements of such a claim, because the complaint alleges that Hartleib tortiously abused the legal process by interjecting himself into various pending cases for no other purpose than to inflict financial and reputational harm on Weiser.

However, to demonstrate a probability of prevailing on an abuse of process claim, a plaintiff must overcome the litigation privilege, *see* CAL. CIV. CODE § 47(b), which "provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." *Action Apartment Assn., Inc. v. City of Santa Monica*, 163 P.3d 89, 95 (Cal. 2007); *see Flatley v. Mauro*, 139 P.3d 2, 17 (Cal. 2006). "The principal purpose of [the litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 786 P.2d 365, 369

(Cal. 1990) (citation omitted).  The privilege is construed broadly, and it applies to all communications and all torts, with the exception of malicious prosecution. *Olsen v. Harbison*, 119 Cal. Rptr. 3d 460, 467 (Ct. App. 2010).  "The breadth of the litigation privilege cannot be understated," *id.*, and "[a]ny doubt about whether the privilege applies is resolved in favor of applying" it.  *Kashian v. Harriman*, 120 Cal. Rptr. 2d 576, 592 (Ct. App. 2002).  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg*, 786 P.2d at 369.

In his amended complaint, Weiser identifies seven predicate actions by Hartleib that he alleges constitute abuse of process.  We analyze each of these allegations in turn.

Weiser's first predicate is that Hartleib challenged the Kansas state court protective order that prevented Hartleib from harassing Weiser Law's client.  This predicate is covered by the litigation privilege, because Hartleib's filings were communicative and were made in judicial proceedings; Hartleib was a "participant" in those proceedings to the extent that the protective order he challenged was directed specifically at him; he sought the objective of setting that order aside; and his filings had a logical relationship to the action in which the

6

protective order was entered.  *See Silberg,* 786 P.2d at 369.  Similarly, Weiser's

seventh predicate—*viz*., that Hartleib commenced a lawsuit against Weiser in

Kansas alleging legal malpractice despite never being Weiser's client—is also

barred by the litigation privilege, inasmuch as there is "no communication that is

more clearly protected by the litigation privilege than the filing of a legal action."

*Action Apartment Assn.*, 163 P.3d at 101.

The third, fourth, fifth, and sixth predicates of Weiser's abuse of process

claim are based on Hartleib's involvement in three cases in which Weiser had

entered an appearance: *In re Equifax, Inc. Derivative Litigation*., No. 1:18-cv-317-

TWT (N.D. Ga.) (the "Equifax Derivative Litigation"); *In re Big Lots, Inc.*

*Shareholder Litigation*, No. 2:12-cv-445-MHW-KAJ (S.D. Ohio) (the "Big Lots

Derivative Litigation"); and *In re Centurylink Sales Practices and Securities*

*Litigation*, No. 17-md-2795-MJD-MM (D. Minn.) (the "Centurylink Derivative

Litigation").

In both the Centurylink Derivative Litigation (to which the fifth and sixth

predicates relate) and the Equifax Derivative Litigation (to which the third

predicate relates), Hartleib submitted amicus curiae briefs opposing Weiser Law's

appointment as lead counsel, and in both cases, Hartleib appeared in person at

court hearings to make that same objection.  In the Centurylink Derivative

Litigation, the court granted Hartleib's motion for acceptance of his amicus brief,

7

and at a hearing on competing motions for the appointment of lead counsel, the court also permitted Hartleib to speak on his objections to Weiser Law's potential appointment. In the Equifax Derivative Litigation, the court did not rule on Hartleib's motion for leave to file his amicus brief, but it granted Hartleib permission to speak on his objection in person. By receiving judicial permission to express his views in those cases, Hartleib was a "participant[] authorized by law," *Silberg*, 786 P.2d at 369, and his expression of his views is thus protected by the litigation privilege.

However, the same cannot be said of Weiser's fourth predicate—*viz*., Hartleib's ex parte emails to the district judge in the Big Lots Derivative Litigation. The judge noted in his order approving the settlement agreement that Hartleib was not "a shareholder in Big Lots or otherwise an interested party in this case." Nor can Hartleib's emails be said to be legally authorized, because, in contrast to the filing of an amicus brief on the docket, Hartleib never obtained permission to contact the district judge. It does not appear that Hartleib had any interest in this case, and his ex parte email to the court served no other purpose than to notify the court of Weiser's alleged billing errors in a prior case. *Cf. Costa v. Superior Ct. of Solano Cnty.*, 204 Cal. Rptr. 1, 4 (Ct. App. 1984) (stating that the litigation privilege applies to non-parties who "possess[] a substantial interest in the outcome of the pending litigation"). Given Hartleib's lack of interest in the Big

8

Lots Derivative Litigation and given the lack of authorization for sending unsolicited emails to the district judge, those emails are not protected by the litigation privilege.

We nevertheless conclude that Weiser failed to demonstrate a reasonable probability of prevailing on his abuse of process claim with respect to this predicate. Because Hartleib's interjection into the Big Lots Derivative Litigation occurred in August 2018, any claim based on such actions is barred by the statute of limitations. In California, the statute of limitations for an abuse of process claim is one year, and that time period "begins to run when the abuse of process occurs." *Cantu v. Resolution Tr. Corp.*, 6 Cal. Rptr. 2d 151, 168 (Ct. App. 1992). Because Weiser did not bring his abuse of process claim until January 27, 2023, any claim that Hartleib abused the judicial process back in August 2018 is time-barred.[1]

Weiser's second predicate—*viz*., that Hartleib threatened to appear and file briefs in Weiser's cases—is also not protected by the litigation privilege. The privilege does extend to "statements made prior to the filing of a lawsuit, whether

---

[1] In his reply brief, Weiser cited only California law concerning the statute of limitations in responding to Hartleib's arguments. Because Hartleib's interjection into the Big Lots Derivative Litigation occurred in Ohio federal court, it is arguable that, under California Code of Civil Procedure § 361, discussed *infra*, Ohio's four-year statute of limitations would apply instead of California's one-year statute. *See Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 119 (Ohio 1994). However, even under Ohio's longer statute of limitations, Weiser's abuse of process claim based on Hartleib's 2018 conduct would still be untimely.

9

in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." *Hagberg v. California Fed. Bank*, 81 P.3d 244, 249 (Cal. 2004). However, the privilege does not protect "hollow threats of litigation." *Action Apartment Assn.*, 163 P.3d at 102 (citation omitted). "A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." *Id*. Reviewing the operative complaint, we conclude that Weiser has plausibly alleged that Hartleib's threats were not made in good faith, but rather for the sole purpose of harassing Weiser and damaging his reputation, and thus are unprotected by the litigation privilege.

Despite falling outside of the litigation privilege, Hartleib's mere threats to interject himself into Weiser's other cases do not qualify as abuse of process. Mere threats of future legal action between parties do not amount to abuse of process, because there is no "misuse of the power of the court." *Rusheen*, 128 P.3d at 718 (citation omitted). "Process is action taken pursuant to judicial authority. It is not action taken without reference to the power of the court." *Adams v. Superior Ct. of Santa Clara Cnty.*, 3 Cal. Rptr. 2d 49, 53 (Ct. App. 1992). Hartleib's "[t]hreats to appear at hearings and file briefs in [Weiser Law's] unrelated pending litigation across the country shadowing [Weiser] as an ever-present threat" were, as mere threats, not "act[s] done in the name of the court and under its authority for the purpose of perpetrating an injustice." *Rusheen*, 128 P.3d at 718 (citation

10

omitted).

Because all seven predicates of Weiser's abuse of process claim fail as a matter of law, Weiser failed to establish a reasonable probability of prevailing on that claim.

**2**

As to Weiser's malicious prosecution claim, we conclude that it is barred by the statute of limitations. Consequently, Weiser failed to establish a reasonable probability of prevailing on that claim.

In addressing this issue, we first must determine which State's statute of limitations applies. Because the district court below sits in California, we apply California's choice of law rules. *See Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). Those rules include California's "borrowing statute," *see* CAL. CODE CIV. PROC. § 361, which provides that where a cause of action "has arisen in another State," and would be barred by that State's statute of limitations, then California will apply that statute of limitations rather than its own, except in the case of a California plaintiff. *Id.*; *see also McCann v. Foster Wheeler LLC*, 225 P.3d 516, 525 (Cal. 2010).

Under California law, "[t]he principle is well established that the cause of action for malicious prosecution first accrues at the conclusion of the litigation in favor of the party allegedly prosecuted maliciously." *Babb v. Superior Ct. of*

11

*Sonoma Cnty.*, 479 P.2d 379, 381 (Cal. 1971). Here, Weiser's claim is based on Hartleib's lawsuit that was filed and dismissed in Kansas. *Hartleib v. Weiser Law Firm, P.C.*, 2019 WL 3943064 (D. Kan. Aug. 21, 2019). Additionally, the conduct underlying all three elements of Weiser's malicious prosecution claim—*viz*., "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice," *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 501 (Cal. 1989) (citation omitted)—occurred in Kansas. Because all of these elements occurred in Kansas, this is a "straightforward" case where "the allegedly tortious conduct, the resulting injury, and compensable damage all occur[ed] at the same time and in the same place." *McCann*, 225 P.3d at 526. Accordingly, Weiser's malicious prosecution claim arose in Kansas. Because Weiser is not a California plaintiff, Kansas's statute of limitations applies under § 361. Kansas's relevant statute of limitations is one year, *see* KAN. STAT. ANN. § 60-514(b), and Weiser's malicious prosecution claim is therefore time-barred.

**II**

Because Hartleib was correctly held to be a prevailing defendant in the district court on a special motion to strike under the anti-SLAPP statute, he is "entitled to recover [his] attorney's fees and costs." CAL. CODE CIV. PROC.

§ 425.16(c). The district court fixed the amount of attorneys' fees and costs at $26,225, and we review that determination for abuse of discretion. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003).

Weiser first contends that one of Hartleib's attorneys, Merrigan, insufficiently documented his billable hours to such a degree that they should be omitted entirely from the attorneys' fee award. This appellate argument is unfathomable, because the district court explicitly *agreed* with this objection when it was raised below and therefore excluded all of Merrigan's time from the fee award.

In addition to excluding all of Merrigan's time, the district court specifically found that the total number of hours for which Hartleib's remaining counsel sought an award was "simply excessive." The excessiveness, the court concluded, was due to the fact that Hartleib's counsel sought fees for all of the "three anti-SLAPP motions and two motions to dismiss," even though the issues in the three anti-SLAPP motions were essentially "identical" and the "issues in the motions to dismiss largely overlapped with the issues in the anti-SLAPP motions." Drawing on its "familiarity with the case" and "its thorough review of Counsel's billing records," the district court concluded that only "60 partner hours and 5 associate hours were reasonably spent on these motions."

Weiser contends that the district court should have categorically excluded all

time for the motions to dismiss, but we find no abuse of discretion on this score. Given the substantial overlap in the underlying substantive issues between the motions, work done on the motions to dismiss could be viewed as contributing to the directly parallel work on the anti-SLAPP motions. Consequently, the district court did not abuse its discretion in concluding that the better approach for addressing Weiser's valid objection to the excessiveness of the time spent on theses motions was to substantially reduce the total billed hours across all five motions.

Weiser's remaining objections involve quibbling that the appropriate reduction should have been even larger than the nearly 50% reduction the district court applied. On this record, we cannot say that the district court abused its broad discretion. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (stating that "trial courts need not, and indeed should not, become green-eyeshade accountants," because the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection").

### III

For the foregoing reasons, we affirm the district court's grant of Hartleib's anti-SLAPP motion and affirm the district court's award of attorneys' fees.

**AFFIRMED.**

14